**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR APICELLA, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-02261 |
| Plaintiff, | |
| v. | |
| APPLE INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

1.      Plaintiff Arthur Apicella, individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Apple Inc. ("Apple" or "Defendant"). Plaintiff alleges, based upon personal knowledge and belief as to his own acts and upon the investigation of counsel, as follows:

**INTRODUCTION**

2.      This class action is brought on behalf of consumers who purchased AirPods Max headphones in the State of New York that were designed, promoted, distributed, warranted, and sold by Apple ("Class Members"). Apple sells the AirPods Max for $549, the most expensive headphones currently sold on Apple's website.

3.      Apple has built a loyal customer base by marketing itself as a revolutionary personal technology company that "leads the world in innovation with iPhone, iPad, Mac, Apple Watch, and Apple TV. Apple's five software platforms — iOS, iPadOS, macOS, watchOS, and tvOS — provide seamless experiences across all Apple devices and empower people with breakthrough services including the App Store, Apple Music, Apple Pay, and iCloud." Apple

customers pay premium prices because they expect premium products that seamlessly work together.

4.     As part of its suite of premium, high-performance products and services, Apple touts that the AirPods Max "join the existing AirPods family in delivering unparalleled wireless audio, whether a customer is listening to music, making phone calls, enjoying TV shows and movies, playing games, or interacting with Siri." Specifically, Apple boasts that the AirPods Max are "innovative wireless headphones that bring the magic of AirPods to an over-ear design with high-fidelity sound" to deliver a "breakthrough listening experience[.]"

5.     However, a latent and material defect causes condensation to accumulate inside the ear cups of the AirPods Max, often after only an hour or several hours of normal use (the "Defect"). In addition to affecting the overall experience and value of the AirPods Max, the Defect also causes some consumers to experience performance problems such as degraded or no sound in one or both of the ear cups, failure to detect the user's ears and of the active noise cancellation ("ANC") function, and/or battery charging issues.

6.     As Apple began developing the AirPods Max for retail sale as early as 2018, Apple knew or should have known of the Defect long before consumers began purchasing them in or around December 2020. Yet Apple sold and continues to sell the AirPods Max without alerting purchasers about the problem.

7.     Despite numerous complaints by AirPods Max owners, Apple has not publicly acknowledged the Defect. Instead, when AirPods Max owners request—within the one-year warranty period—that Apple remedy and/or address the Defect and/or resultant damage at no expense, Apple refuses to do so.

8.     The Defect existed in each AirPods Max at the time it was sold.

2

9.     Reasonable consumers expect that high-end, premium-priced wireless headphones will not repeatedly become wet with condensation, which will ultimately damage or degrade the headphones, after minimal use and/or as the result of normal and intended ordinary use. Reasonable consumers, including Plaintiff, would not have purchased the AirPods Max had they known of this Defect.

10.    As a result of Apple's unfair, deceptive, and/or fraudulent business practices, purchasers of the AirPods Max, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or value. Plaintiff and the Class Members purchased AirPods Max that they would not have otherwise purchased, had they known of the existence of the Defect. Plaintiff and other Class Members were also deprived of the benefit of their bargain in that they bought defective AirPods Max that are not worth the price that they paid.

## JURISDICTION AND VENUE

11.    This Court has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Members of the Classes are citizens of New York different from Defendant's resident state, California; the aggregated claims of Class Members exceed $5 million, exclusive of interest and costs; and there are more than 100 members in the proposed Class.

12.    This Court has personal jurisdiction over Apple because Apple has regular and systematic contacts in the state of New York, in which it does business and placed Apple AirPods Max into the stream of commerce.

13.    Pursuant to 28 U.S.C. § 1391, venue is proper in this District because Apple is subject to personal jurisdiction and the sale and delivery of the AirPods Max to Plaintiff and Class Members occurred in this District, giving rise to those claims.

**PARTIES**

14.     On April 9, 2021, Plaintiff Arthur Apicella, while residing and domiciled in Wantagh, New York, placed an order for the AirPods Max headphones, along with AppleCare+, through Apple's website online. Mr. Apicella paid $549.00 for the AirPods Max and $59.00 for AppleCare+. Mr. Apicella was invoiced for the AirPods Max on April 23, 2021, and received delivery of the AirPods Max at his residence in Wantagh, New York, through the mail thereafter.

15.     Before purchasing his AirPods Max, Mr. Apicella researched the AirPods Max on the internet by visiting the product page on Apple's website and relied on his previous experience with Apple products and trusted that they were high-quality, high-performance, durable products. Upon receiving his AirPods Max, Mr. Apicella reviewed Apple's AirPods Max box, the documents included with the AirPods Max, and proceeded with the setup process to begin using his AirPods Max. At no point before using the AirPods Max, did Mr. Apicella see any disclosure that the AirPods Max were defective and prone to condensation or other condensation-related failure.

16.     Unbeknownst to Mr. Apicella, at the time of his purchase, Apple already knew of and was responding to customers complaining of condensation problems and related performance and connectivity issues, examples of which are described *supra* paragraphs 35-39.

17.     Upon using the AirPods Max shortly after receiving them, Mr. Apicella noticed excessive condensation in his AirPods Max ear cups while watching a movie sitting in his living room.

18.     Mr. Apicella's AirPods Max generate condensation in the ear cups every time he used them, often after only about 15 minutes of use. Due to the condensation problems, Mr. Apicella did not receive the benefit of his bargain in that he purchased headphones that do not

function properly and are defective, e.g., resulting in his AirPods Max's connectivity issues and degraded sound quality.

19.     Before purchasing his AirPods Max, Mr. Apicella did not know that the headphones suffer from the Defect. Had Apple disclosed the defective nature of the AirPods Max prior to his purchase, on its website, the product's box, or in the accompanying materials, he would not have purchased the AirPods Max. Mr. Apicella relied on Apple's product pages and materials accompanying the AirPods Max, and ultimately purchased the AirPods Max because they were represented to be and marketed as high-quality, luxury headphones providing superior, continuous sound quality and lacking of any disclosure of the Defect.

20.     At all times, Mr. Apicella has attempted to use his AirPods Max in a foreseeable manner in the sense that he has not dropped it in water, spilled water on it, or used it for purposes unintended by Apple. However, despite his normal and foreseeable uses, the Defect has rendered his AirPods Max unfit to be used as intended.

## FACTUAL ALLEGATIONS

21.     The high-end earphone and headphone market—particularly in the wireless technology segment—has been and is continuing to expand in recent years. The global earphone and headphone market is slated to exceed a valuation of $150 billion by the end of 2026.

22.     AirPods Max is Apple's first proprietary headphone product to feature wireless capabilities in an over-the-ear—as opposed to pods that are inserted in the ear—design. Apple introduced the AirPods Max for pre-order on December 8, 2020, with availability beginning on December 15, 2020.

23.     Apple designs, distributes, warrants, markets, and sells the AirPods Max, throughout the United States and in New York. Apple sells the AirPods Max through its own retail

stores and third-party retail stores such as Best Buy, Verizon, and Amazon, both in brick-and-mortar stores and online. The retail price for the AirPods Max is $549.

24.     At least three years ago, Apple began developing the AirPods Max, which it originally planned to release to the public as early as 2018. However, numerous delays caused production and release to be postponed until December 2020.

25.     Prior to Apple's release of AirPods Max in December 2020, the only wireless, over-the-ear headphone sold by Apple were Beats headphones, from Beats Electronics, a headphones company that Apple acquired in May 2014.

26.     Apple built an aggressive marketing campaign to push consumers to purchase the AirPods Max, which are currently the first listing on Apple's website under the Headphones and Speakers category.

27.     Several months before the Airpods Max release, Apple began offering "rare" discounts on Beats products, and in October 2020, Apple stopped offering them for sale, pulling the webpages for Beats headphones and the products themselves from Apple's website and retail stores.

28.     Crucially, in addition to this aggressive marketing of its AirPods Max, most of Apple's current iPhone offerings do not include a headphone jack. Therefore, wireless headphones must be used with most iPhones currently sold by Apple, unless the consumer buys a headphone jack converter.

29.     Apple's landing page for the AirPods Max greets the consumer with, "Introducing AirPods Max — a perfect balance of exhilarating high-fidelity audio and the effortless magic of AirPods. The ultimate personal listening experience is here." It goes on to state:

The over-ear headphone has been completely reimagined. From cushion to canopy, AirPods Max are designed for an uncompromising fit that creates the optimal acoustic seal for many different head shapes — fully immersing you in every sound.

The **canopy** spanning the headband is made from a breathable knit mesh, distributing weight to reduce on-head pressure.

The **stainless steel frame** is wrapped with a soft-to-the-touch material for a remarkable combination of strength, flexibility, and comfort.



**Telescoping arms** smoothly extend and stay where you set them, for a consistent fit and seal.

The **beautifully anodized aluminum cups** feature a revolutionary mechanism that allows each cup to rotate independently and balance pressure.

30.     Apple goes on to tout the AirPods Max's premium technological features:

31.     And Apple continues, "Spatial audio with dynamic head tracking gives you a



theater-like experience for movies and shows, with sound that surrounds you. Using built-in

gyroscopes and accelerometers, AirPods Max and your iPhone or iPad track the subtle motion of

your head, anchoring sounds to your device."

32.     Apple also promises "20 hours of listening, movie watching, or talk time — with

Active Noise Cancellation and spatial audio enabled. Simply charge via Lightning connector. A

quick 5-minute charge delivers 1.5 hours of listening."

33.     Notably, on its website with care instructions for AirPods Max, Apple notes that

"AirPods Max, and Smart Case aren't waterproof or water resistant, so be careful not to get

moisture in any openings[,]" repeating the exhortation to "[a]void getting moisture in any openings[,]" and "[m]ake sure not to get any liquid in the openings" multiple times.

34.     But numerous consumers have complained in online forums and Apple's own community boards that condensation forms in the ear cups of their AirPods Max, sometimes causing liquid to seep into the drivers. For instance, on third-party online consumer forums and Twitter, users posted the following:

(a)    On December 27, 2020, a user named Donald Filimon tweeted and posted on reddit.com: "So, uhh... my AirPods Max form condensation after extended use. They've never been used in any humid environment. The water gets inside the drivers and has caused ear detection problems. I've been wearing them inside sitting at a desk mainly, nothing crazy. Super concerning issue"[1]

(i)    On December 29, 2020, another user responded to the above on twitter.com: "Had exactly the same issue, with a light walk (40mn) and then again while watching a movie (1h30). Decided to return them after seeing that the water was also getting inside the driver and that the ring was getting red... too worrisome for me"

(ii)    On December 30, 2020, another user responded to the above on reddit.com: "I'm having the exact same issue. I'm in Bradenton Florida, I work inside a dr office and had my AirPods Max on for 2.5 hours. I just happen to remove the earmuffs while cleaning them and noticed all

---

[1] https://twitter.com/underswitch/status/1343295141403111426

this condensation inside and the driver as well. And it's weird because I'm not moving around at all. Really freaked me out."

(iii)On January 1, 2021, another user responded to the above on reddit.com: "Today it happened to me, but after walking for 1 hour in the street, the weather was 0."

(iv)On December 27, 2020, another user responded to the above on reddit.com: "I noticed this with mine and I just got them yesterday."

(v) On December 27, 2020, another user responded to the above on reddit.com: "Have experienced this too. Not to this extent, but have seen some condensation when I take the ear cup off."

(vi)On January 2, 2021, another user responded to the above on reddit.com: "Got mine today. Unboxed and using it while walking outside (the air temperature is around 10°C today) going from places to places for about 6 hours or so. Came back home, took the ear cups off wanting to see the magnetic magic, and surprised that I saw some condensation built up like OP's. Started Googling, and now I'm here."

(vii)   On December 29, 2020, another user responded to the above on twitter.com: "Have same issue. After wearing them for an hour and a half watching a movie, in a 20 degrees Celsius living room. Space Grey also. Probably other headphones have same issue but you just can't see it. Wondering what to do. Keep them or better return them."

(b)    On December 16, 2020, another user posted on reddit.com: "Why am I seeing condensation inside my ear cups as well as on my drivers????"[2]

(c)    On December 20, 2020, another user posted on macrumours.com: "So I've had my AirPods Max for just under a week and have noticed that after prolonged usage there's a decent amount of condensation inside the ear cup. It's quite noticeable when you detach the magnetic ear cushions from the ear cup."[3]

(d)    On December 17, 2020, another user posted on reddit.com: "I actually noticed this after the 2 hour mark, but it was only in the right ear cup (left was completely fine). I want to assume its condensation, but it was quite a bit of liquid for it to be from condensation alone. I used an air squirter thingy I use on my camera to try to dry it off, but ultimately it took about 45 minutes for it to completely dry out. Some of the liquid actually got through the fine mesh and landed on the driver. I'm going to keep using them and see if it continues to happen at the same rate or if it goes away. But as of right now, I really can't recommend these for working out. Edit: just realized now this post makes it sound like I worked out using the headphones. I haven't and never planned to. It was more of a warning for those that

---

[2] https://www.reddit.com/r/airpods/comments/keex68/airpods_max_problem/

[3] https://forums.macrumors.com/threads/condensation-in-airpods-max-after-long-usage.2276504/

suggested that they would do it (apparently people in this sub said they would still work out with them)."[4]

35.     Similarly, on Apple's own community boards, users posted as follows:

(a)     A user named "jehidan" posted the following, which generated 114 responses stating that they had the same question:

Q: **Condensation in the Airpods Max**

After I wear my Airpods Max for about half an hour, there is liquid accumulation on the inside of the headphones, especially on the round speakers themselves. These are expensive headphones and I don't want them to go to waste because of a design flaw. Will this damage my headphones and if it does, will Apple fix the problem they created?

Posted on Jan 4, 2021 11:40 AM

[ Reply ] [ I have this question too (114) ]

(b)     A user named Sheridan712 posted the following, which generated 9 responses stating that they had the same question:

Q: **AirPods Max**

What about the condensation issue I just read about? Should I return mine. I just got them yesterday.

Posted on Jan 1, 2021 8:02 PM

[ Reply ] [ I have this question too (9) ]

(a)     A user named "maxim10" posted the following, which generated 2 responses stating that they had the same question:



---

[4] https://www.reddit.com/r/airpods/comments/kexq05/returning_my_airpods_max/

Q: Anyone else experiencing Condensation in their AirPods Max?

Will Apple recall? Any update from anyone else?

Posted on Jan 11, 2021 8:33 PM

| Reply | I have this question too (2) |

36.    In addition to Plaintiff, AirPods Max owners complained on consumer online forums that they have experienced performance issues following condensation gathering in the ear cups of the AirPods Max, stating:

   (a)    On January 2, 2021, the above user named Donald Filimon tweeted a reply to a question regarding performance or connectivity issues: "Not with noise canceling yet. I've mainly had issues with the headphones disconnecting and not going to sleep when in the smart case. I believe both of these issues are caused by ear detection problems when water covers the sensors."[5]

   (b)    On January 3, 2021, a user posted on macrumours.com: "I can confirm I have the same [condensation] issue and that it is also linked to the issue of the ANC failing and the wind noise. The drivers get wet and the noise starts up, ANC stops working and sometimes no sound comes out of either ear. A restart helps but this is extremely disappointing."[6]

   (c)    "Mine are doing the same thing with around an hour of listening time...having ear detection issues @Apple"

---

[5] https://twitter.com/underswitch/status/1345414930779013125

[6] https://forums.macrumors.com/threads/condensation-in-airpods-max-after-long-usage.2276504/

13

(d)     On January 19, 2021, a different user posted on reddit.com: "Returning my AirPods Max... why? You guessed it. Condensation. I am incredibly sad to see them go, they sound, feel, and look amazing. However, they formulate water on the drivers themselves, so they'd eventually stop working. I just hope Apple puts out a fix, sooner rather than later."[7]

(i)     On January 20, 2021, another user responded to the above on reddit.com: "After constant condensation issues mine completely shat out. Unable to connect to device, Digital Crown stopped working, can't switch modes, basically unusable although the light at the bottom still works. Returned it in their box which makes you keep the ear ups and replacement pair should be coming tomorrow. Let's see if this happens again and how they're going to resolve it if it happens over and over again."

(e)     On July 1, 2021, a different user posted on reddit.com:

This is my now third pair of Airpods Max since launch and each pair slowly starts to have lots of issues. fourth pair was just received back to day as a replacement. I got my third pair 2 weeks ago and had major issues so i decided to send it in for repair.


Issues I've had


- ANC button stops working, it will go on/off randomly on its own. using settings in iphone do not stick
- airpods do not detect when its on my head - no auditory sounds

---

[7] https://www.reddit.com/r/airpods/comments/l0mqlu/returning_my_airpods_max _why_you_guessed_it/

- airpods connect to devices and music will play but no sound comes out
- airpods stop turning on ,no way to reset, no light indicators turn on for any reason
- airpods stop letting me reset them

I just got back my fourth pair that have actually been successfully "repaired" ( to my surprise) and all symptoms are related to. "liquid damage issue" the only liquid in these airpods is from the condensation so this makes me think that we should actually be worrying about condensation because if there is too much it slowly kills your airpods max to the point they do nothing but become a paper weight...[8]

(f)    On September 16, 2021, a different user posted on reddit.com:

So what's the fix for the AirPods Max condensation problem? I'm gonna be on my third pair soon, unless I give up and get the Bose instead.

My first pair stopped working all together, but was exhibiting a lot of 'short circuit' issues, like ANC turning off and off at random, disconnections happening during a song, stopping and starting music randomly. Eventually the battery started having problems and saying that it was only 1 percent charged no matter what I did.

At that time I didn't suspect it to be condensation built up, but from what I've been reading, it's a widespread issue for heavy users (people who wear them for hours at a time).

My second pair just crapped out, waking me up at midnight flipping the ANC on and off like a crazy person. I was in my sleep, so I wasn't doing it. It was the condensation build up again. I could see the water droplets around the speaker grill, which most likely means that the cups themselves on the inside were filling up (otherwise it would never reach the grill).

What is one to do?

These cost me so much money, and I've been having so many problems with them, all from this basic design flaw, aluminum condensates air humidity when there's a temperature difference big

---

[8] https://www.reddit.com/r/Airpodsmax/comments/obul4v/
did_apple_just_admit_condensation_build_up_was/

enough, and since there's 'no where for the water to go, it eventually fries the electronics inside.

Is this because Johnny Ive left Apple? No one thought about this basic concept of science?

PS: If you only use AirPods Max inside, and don't crank the AC like I do, and never use them for long... you most likely will never experience this issue. But if you use them as your main driver all day, and your ears get warm (temperature difference engaged, "yay"), then you will eventually.[9]

(g)    On November 2, 2021, a different user posted on reddit.com:

. . . . But from the condensation, I've had a myriad of issues:
Soft Static in the right headphone while in Transparency Mode
APMs cutting off while on my head
Digital Crown not adjusting volume on my iPad
APMs not cutting on when put on my head


I've already sent in my APMs through the limited warranty, and they replaced the right headphone. However, the driver is so susceptible to condensation that the static is starting again already, and it's now clicking softly too in the right ear. I may have to get them replaced altogether if possible.


I do wish they had some leather earcups to help with the condensation affecting the drivers, but when I get the time and money , I'll just send my APMs in for warranty again and order a pair of blue earcups to wear while I clean the other pair.[10]

(h)    On December 7, 2021, a different user posted on reddit.com:

Hello! New to the subreddit, but I have a question regarding the condensation issue of the Max. So I am on my second pair (had them for 8 days now!) and just learned about this issue today. Today I was

---

[9] https://www.reddit.com/r/airpods/comments/pp8gcq/so_whats_the_fix_for_the_airpods_max_condensation/

[10] https://www.reddit.com/r/Airpodsmax/comments/ql3wud/how_is_your_airpods_max_so_far/

using the headphones, and the right earcup stopped working, then the left. I took off the cups and saw the condensation, so I took a microfiber cloth, wiped them down, and left everything to dry for about 3-4 hours. Now I'm having an issue where when the headphones are plugged in, and if I press the noise control button, the light turns green for a sec then nothing. If I hold it turns white for a sec then nothing. And if I hold the crown and the noise control after 15 seconds, it turns amber and again back to nothing. If I take them off the charger, they are completely unresponsive. What do I do?? . . . .[11]

(i) Subsequent users responded to the above post suggesting, "Put a piece of electrical tape over the pin hole inside the cups."

(ii) The original user posted an update, stating "(Thank you so much to everyone that commented! This morning as expected the headphones were completely fine and I put the electrical tape over the hole so hopefully, it's a lasting fix!! Definitely gonna be more aware of how long I wear them, and the possible temp changes and stuff! I appreciate you all :D)"

37.     On Forbes.com, in a January 2, 2021 article titled "AirPods Max Users Report Worrying 'Condensation' Problems," the author noted,[12]

Not only did Apple (controversially) decide not to make the AirPods Max water resistant, it appears the company's decision to make the ear cups out of aluminium is the cause of the problem. Aluminium stands out, but it is a poor insulator which - as users have pointed out - likely creates the condensation problem due to heat build up from wearing the (also heavy) AirPods Max over time. If this owner theory is correct, there's no easy way to fix it. Which may also explain why almost all rivals use plastic.

---

[11] https://www.reddit.com/r/Airpodsmax/comments/rarl93/airpods_max_condensation_problem/

[12] https://www.forbes.com/sites/gordonkelly/2021/01/02/apples-airpods-max-condensation-problem-upgrade-new-airpods-pro-iphone-headphones/?sh=89255f332c71

38.    The Forbes.com article also reported that Apple refuses to acknowledge the Defect and instead requires the customer to pay out-of-pocket for repairs due to the Defect, quoting a customer who stated:[13]

> I chatted with Apple about the coverage and they also said it's a $29 repair on top of the $59 purchase of the AppleCare. That's $680 with tax where I'm at, for headphones and coverage. She told me to just make sure to wipe them down after every use. And I'm just like - I can get the moisture out of the inside part of the muffs area, but not in the drivers area AT ALL. And that's what worries me. Might just return them and wait for [the] second gen.

39.    In other words, Apple blames the customer for allowing the AirPods Max to retain moisture, when in fact Apple's own design Defect causes the damaging moisture through condensation. Then, adding insult to injury, Apple requires customers to pay to repair the AirPods Max that they have only owned for a short period of time.

40.    As the experiences of these consumers and Plaintiff demonstrate, the Defect causes the AirPods Max to fail to perform as advertised and/or generate condensation that, according to Apple's own care instructions—keeping the product openings free of moisture or liquid, is contrary to the use for which they were intended.

41.    For example, Plaintiff and Class Members are unable to use their AirPods Max to enjoy "exhilarating high-fidelity audio and the effortless magic of AirPods" or the supposed "[s]patial audio with dynamic head tracking [giving them] a theater-like experience for movies and shows, with sound that surrounds [them.]" Rather than being able to have their "AirPods Max and . . . iPhone or iPad track the subtle motion of [their] head[s]," the AirPods Max of Plaintiff and other Class Members switch between connecting with their Apple laptops and their iPhones

---

[13] *Id.*

and exhibit pauses in connectivity or sound quality with minor/slight head movements due to the Defect. Plaintiff and the Class Members also report that their AirPods Max fail to connect to their wireless networks unless they reset the headphones with increasing frequency as the condensation worsens.

42.    Apple also promises "20 hours of listening, movie watching, or talk time — with Active Noise Cancellation and spatial audio enabled. Simply charge via Lightning connector. A quick 5-minute charge delivers 1.5 hours of listening."

43.    Plaintiff's AirPods Max headphones do not conform to the contract description or the standard for a high-end, luxury product priced hundreds of dollars higher than other wireless over-the-head headphones. Indeed, comparable headphones from Bose and Sony range from $350 to $400, which is at least $150 less than the AirPods Max retail price of $549.[14] All other wireless over-the-head headphones sold by Apple range from $199.95 to $399.95[15]

44.    Apple knew or should have known, from its own internal records, and from the complaints on Apple's website and third-party forums, and through customer complaints directly to Apple's representatives, of the Defect. In addition,

45.    Upon information and belief, Apple, through (a) their own records of customers' complaints, (b) Apple Store repair records, (c) warranty and post-warranty claims, and (d) complaints online, on its own community boards, in news articles, and on third-party websites, was well-aware of the Defect but failed to notify consumers of the nature and extent of the

---

[14] *See, e.g.*, https://www.cnet.com/tech/mobile/airpods-max-vs-bose-700-vs-sony-wh-1000xm4-the-best-noise-canceling-headphones-compared/; https://www.whathifi.com/us/advice/apple-airpods-max-vs-sony-wh-1000xm4-vs-bose-noise-cancelling-headphones-700-which-should-you-buy

[15] https://www.apple.com/shop/accessories/all/headphones-speakers?page=1&f=headphone&fh=47d1%2B45f6

problems with the AirPods Max or provide any adequate remedy. In addition to the above sources, Apple was aware of the Defect through its own pre-release research, development, and testing.

46.    For example, Apple's AirPods Max product page touts the battery life of 20 hours of listening—or 1.5 hours of listening after a "quick 5-minute charge"—based on "**Testing conducted by Apple in November 2020** using preproduction AirPods Max and software paired with iPhone 12 Pro Max units and prerelease software."[16]

47.    Additionally, on Apple's webpage offering "information about getting a good fit and potential skin sensitivities" regarding its earphone and headphone products including the AirPods Max, it states, "A great deal of care and research goes into choosing materials for all our devices. As part of our testing and evaluation process, both Apple and independent laboratories test the materials used in our products. Only materials that pass our rigorous review process are acceptable for use in Apple products."[17]

48.    Apple undoubtedly performed extensive research and testing beyond battery life and materials sensitivity in connection with its AirPods Max as early as 2018, the year that media reports projected Apple's initial release of the AirPods Max.

49.    In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Defect and repair and replacement of their AirPods Max, despite such defect having been contained in the product when manufactured by Apple.

50.    Consumers were without access to the information concealed by Apple as described herein, and therefore reasonably relied on Apple's representations and warranties regarding the

---

[16] https://www.apple.com/airpods-max/?afid=p238%7Cssva4QyZK-dc_mtid_1870765e38482_pcrid_490221026373_pgrid_124603971068_&cid=aos-us-kwgo---slid---product-  (emphasis added).

[17] https://support.apple.com/en-us/HT211158

quality, durability, and other material characteristics of the AirPods Max. Had consumers known of the Defect, they would not have purchased the AirPods Max and would certainly not have paid $549 for the product. Plaintiff and similarly situated Class Members did not receive the benefit of their bargain when they purchased their AirPods Max, and were accordingly injured at the time of sale.

## TOLLING OF THE STATUTES OF LIMITATION

51.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the AirPods Max and could not reasonably discover the Defect or Defendant' deception with respect to the Defect.  Defendant and their agents continue to deny the existence and extent of the Defect, even when questioned by Plaintiff and members of the Class.

52.    Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant were concealing a defect and/or the AirPods Max contained the Defect. As alleged herein, the existence of the Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that the Defendant were concealing the Defect.

53.    At all times, Defendant are and were under a continuous duty to disclose to Plaintiff and members of the Class the true standard, quality and grade of the AirPods Max and to disclose the Defect due to their exclusive and superior knowledge of the existence and extent of the Defect in AirPods Max.

54.    Defendant knowingly, actively and affirmatively concealed the facts alleged herein. Plaintiff and members of the Class reasonably relied on Defendant's knowing, active, and affirmative concealment.

55.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant' fraudulent concealment, and Defendant are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Classes defined below pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

57.    The Class is defined as all persons or entities in the State of New York who purchased Apple AirPods Max headphones (the "Class").

58.    Excluded from the Class are: (a) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (b) the Judge to whom this case is assigned and the Judge's staff. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

59.    Numerosity:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control.

22

60.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased the AirPods Max designed, distributed, warranted, and sold by Apple. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that they have all incurred or will incur the cost of purchasing the defective product, and of repairing or replacing the defective AirPods Max and/or its components.  Furthermore, the factual bases of Apple's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

61.     <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include the following:

(a)     Whether AirPods Max are defective;

(b)     Whether AirPods Max are defectively designed and/or manufactured;

(c)     Whether Defendant knew about the defects pertaining to the AirPods Max and, if so, how long Defendant has known of the defect;

(d)     Whether the defective nature of the AirPods Max constitutes a material fact;

(e)     Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(f)     Whether Defendant knew or reasonably should have known of the Defect before it sold AirPods Max to Class Members;

(g)     Whether Defendant should be declared financially responsible for notifying the Class Members of problems with the AirPods Max and for the costs and expenses of repairing and replacing the defective AirPods Max;

(h)    Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective AirPods Max;

(i)    Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing their defective AirPods Max;

(j)    Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

(k)    Whether Defendant breached its express warranties under UCC Section 2301;

(l)    Whether Defendant was unjustly enriched by receiving monies in exchange for AirPods Max that were defective; and

(m)    Whether Defendant should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of defective AirPods Max.

62.    <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to vigorously prosecute this action.

63.    <u>Predominance and Superiority</u>:  Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few

Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**COUNT I**
**Breach of The Implied Warranty of Merchantability**
**N.Y. UCC §§ 2-314**
**(On behalf of Plaintiff and the Class)**

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     This claim is brought on behalf of Plaintiff individually and on behalf of the Class against Defendant.

66.     Defendant was at all relevant times the designer, manufacturer, distributor, warrantor, and/or seller of the AirPods Max under N.Y. UCC § 11-2-104(1) and § 2-103(1)(d).

67.     Defendant impliedly warranted to Plaintiff and Class members that the AirPods Max were "merchantable" within the meaning of N.Y. UCC §§ 2-314. However, the AirPods Max do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

68.     Defendant knew or had reason to know of the specific use for which the AirPods Max were purchased.

69.     Defendant impliedly warranted that the AirPods Max were of merchantable quality, would pass without objection in the trade, and are fit for their intended use.

70.     Contrary to the applicable implied warranties, the AirPods Max at the time of sale and thereafter would not pass without objection in the trade because they do not perform as

25

warranted and because the Defect causes them to generate condensation in the ear cups after minimal use under normal conditions, which is contrary to Apple's explicit care and use instructions to keep moisture away from, and out of, the AirPods Max openings.

71.     Contrary to the applicable implied warranties, the AirPods Max at the time of sale and thereafter were not fit for their ordinary and intended purpose of performing as warranted and being designed and/or manufactured so that damage inducing condensation is prevented from forming in the ear cups, in accordance with Apple's explicit care and use instructions. Instead, the AirPods Max are defective as a result of the Defect.

72.     The alleged Defect is inherent and was present in each AirPods Max at the time of sale.

73.     As a result of Defendant's breach of the applicable implied warranties, owners of the AirPods Max suffered an ascertainable loss of money, property, and/or value of their AirPods Max. Additionally, as a result of the Defect, Plaintiff and Class members were harmed and suffered actual damages in that the AirPods Max are not worth the price paid and/or are substantially certain to fail before their expected useful life has run.

74.     Defendant's actions, as complained of herein, breached the implied warranty that the AirPods Max were of merchantable quality and fit for such use in violation of New York law.

**COUNT II**
**Violation of the Magnuson-Moss Warranty Act**
**(15 U.S.C. § 2301, *et seq.*)**
**(On behalf of Plaintiff and the Class)**

75.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76.     This claim is brought on behalf of Plaintiff individually and on behalf of the Class against Defendant.

77. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

78. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

79. The AirPods Max are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

81. Defendant's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

82. Defendant breached the implied warranty by virtue of the above-described acts.

83. Plaintiff and the other Class Members notified Defendant of the breach within a reasonable time and/or were not required to do so. Defendant was also on notice of the Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

84. Defendant's breach of the implied warranty deprived Plaintiff and Class Members of the benefits of their bargains.

85. Defendant breached these warranties, as described in more detail above. Without limitation, the AirPods Max contain a Defect causing them to fail to perform as warranted and to generate condensation in the ear cups after minimal use under normal conditions, which is contrary to Apple's explicit care and use instructions to keep moisture away from, and out of, the AirPods Max openings. The AirPods Max share a common defect in that they are manufactured with defective materials and/or with poor workmanship. Contrary to Defendant's representations about

its AirPods Max, the AirPods Max are defective in design, materials and/or workmanship and are unsafe. The AirPods Max share a common defect.

86.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Defendant has long been on notice of the claims of Plaintiff and Class members and has refused to provide a remedy, instead placing the blame on customers or refusing to acknowledge the existence of the defect.

87.    At the time of sale of each AirPods Max, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Defect in the AirPods Max and their inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

88.    Plaintiff and the other Class members would suffer economic hardship if they returned their AirPods Max but did not receive the return of all payments made by them. Because Defendant is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their AirPods Max by retaining them.

89.    Plaintiff provided notice to Defendant of their intent to pursue class claims under the MMWA via letter dated April 21, 2025.

90.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

91.    Plaintiff, individually and on behalf of all members of the Class, seek all damages permitted by law, in an amount to be proven at trial.

**COUNT III**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

92.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.    This claim is brought on behalf of Plaintiff individually and on behalf of the Class against Defendant.

94.    As a direct and proximate result of Defendant's failure to disclose known defects, Defendant has profited through the sale of the AirPods Max.  Defendant receives the majority of the profits from the AirPods Max sales paid by Plaintiff and Class members.

95.    Additionally, as a direct and proximate result of Defendant's failure to disclose known defects in the AirPods Max, Plaintiff and Class Members have headphones that require repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

96.    All Class members conferred a benefit on Defendant.

97.    Plaintiff and all Class members were not aware of the true facts about the AirPods Max and did not benefit from Defendant's conduct.

98.    Defendant has been unjustly enriched due to the known Defect in the AirPods Max through the use of money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

99.    As a result of the Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

100.    Plaintiff and Class Members seek disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

101.    Additionally, Plaintiff seeks injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiff also seeks injunctive relief enjoining Defendant from further deceptive distribution, sales, and warranty (in that Defendant refuses to acknowledge claims brought under warranty) practices with respect to AirPods Max, enjoining Defendant from selling the AirPods Max with misleading information in that the Defect is not disclosed; compelling Defendant to provide Class members with a replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**COUNT IV**
**Fraud by Omission**
**(On behalf of Plaintiff and the Class)**

102.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

103.    This claim is brought on behalf of Plaintiff individually and on behalf of the Class against Defendant.

104.    Defendant engaged in fraudulent and deceptive conduct. As described above, Defendant's conduct defrauded Plaintiff and Class members by intentionally leading them to believe, through omissions, suppressions, and concealments of material fact, that the AirPods Max possessed important characteristics that they in fact do not possess—namely that they are premium quality, high performance wireless headphones will not repeatedly become wet with condensation, which will ultimately damage or degrade the headphones, after minimal use and/or as the result of normal and intended ordinary use—and inducing their purchases.

105.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to pay $549 to purchase Defendant's AirPods Max. Whether high-end, premium-priced, luxury headphones are able to be used for more than one or two hours of continuous use without having condensation gather and ultimately degrade the promised superior audio quality, connectivity, and battery life is material to purchasers of premium wireless headphones priced hundreds of dollars more than comparable competitors' headphones. Had Plaintiff and Class Members known about the defective nature of the AirPods Max, they would not have purchased them.

106.    Defendant failed to disclose and/or intentionally suppressed and concealed material facts about the performance and quality of the AirPods Max. As alleged herein, Defendant knew about the defective nature of the AirPods Max and was aware of numerous consumer complaints, but never disclosed the Defect to Plaintiff and Class members.

107.    Because the Defect in the AirPods Max is latent and unobservable until it arises, Plaintiff and Class members had no reasonable means of knowing that Defendant's representations concerning the AirPods Max were incomplete, false, or misleading, or that it had failed to disclose that the AirPods Max are defective. Plaintiff and Class members did not and reasonably could not have discovered Defendant's deceit before they purchased their AirPods Max.

108.    Defendant had a duty to disclose the Defect because the Defect is material and Defendant possessed exclusive knowledge of it. Defendant acquired its knowledge of the Defect from numerous consumer complaints and warranty claims, and Defendant's non-public internal data, analyses, and communications, among other sources.

109.    Defendant also had a duty to disclose the Defect because Defendant made partial representations regarding the purported high quality of the AirPods Max, yet failed to disclose facts that would have materially qualified these partial representations. Defendant made these partial and misleading representations through marketing materials, advertising, product brochures, and labeling, statements made through its agents and on its website, and in other sources that Plaintiff and Class members encountered before purchasing their AirPods Max. In light of Defendant's voluntarily providing such partial information to Plaintiff and Class members, Defendant had a duty to disclose the entire truth about the AirPods Max and, in particular, its defective nature and the Defect specifically.

110.    Before and immediately after purchase, Plaintiff relied on Defendant's reputation – along with Defendant's failure to disclose the faulty and defective nature of the AirPods Max on websites and in product manuals and brochures that accompanied the AirPods Max.

111.    These informational sources that Plaintiff saw or heard, including statements on websites, product manuals, brochures, or promotional materials, did not disclose the Defect or that the AirPods Max are defective.

112.    Defendant concealed the Defect to sell more AirPods Max at higher prices, to protect its brand, and to avoid the costs of honoring warranty claims and making effective repairs, replacements, and refunds for its customers.

113.    Defendant continued to conceal the defective nature of the AirPods Max even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

114.    Had Defendant disclosed its knowledge of the Defect before Plaintiff and Class members purchased their AirPods Max, they would have seen such disclosures and been aware of

them. Defendant's omissions were material to Plaintiff and Class members, as they would not have purchased the AirPods Max had they known it contained the Defect and would not have paid $549 for the product.

115. At the time that Defendant misled Plaintiff and Class Members, failing to disclose and concealing these material facts, and at the time that Plaintiff and Class members purchased the AirPods Max, Plaintiff and the Class were unaware of the Defect.

116. Plaintiff and Class members did in fact rely upon Defendant's advertising scheme, materials, and website touting the AirPods Max and lacking any disclosure regarding the defective nature of the AirPods Max and such reliance was reasonable.

117. As a direct and proximate cause of Defendant's deceptive and fraudulent conduct, Plaintiff and Class members sustained damages.

118. Defendant's fraudulent conduct in suppressing and concealing material facts was malicious, oppressive, deliberate, and intended to defraud Plaintiff and Class members and enrich Defendant, and in reckless disregard of Plaintiff's and Class members' rights, interests, and well-being. Plaintiff and Class members seek an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined at trial.

## <u>COUNT V</u>
**Violation Of New York General Business Law § 349**
**N.Y. Gen. Bus. Law § 349**
**(On behalf of Plaintiff and the Class)**

119. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

120. This claim is brought on behalf of Plaintiff individually and on behalf of the Class against Defendant.

121.    The sale and distribution of the AirPods Max in New York constitutes a consumer-oriented act and thereby is governed by the New York deceptive acts and practices statute, General Business Law ("GBL") § 349.

122.    Defendant violated GBL § 349 by representing that:

   a.    The AirPods Max had characteristics, uses, or benefits which they did not have; and,

   b.    The AirPods Max were of a particular standard, quality, or grade which they were not.

123.    Defendant's scheme and concealment of the true characteristics of the AirPods Max and its Defect were material to Plaintiff and Class Members, as Defendant intended.

124.    Had Plaintiff and Class Members known the truth, they would not have purchased the AirPods Max, or – if the AirPods Max's true nature had been disclosed and mitigated, Plaintiff and Class Members would have paid significantly less for the AirPods Max.

125.    Plaintiff and Class Members had no way of discerning or otherwise learning that Defendant's representations were false and misleading and that Defendant had concealed or failed to disclose facts relevant to the Defect in their AirPods Max, until Plaintiff and Class Members' AirPods Max began manifesting the Defect. Plaintiff and Class Members did not, and could not, unravel Defendant's deception on their own.

126.    Defendant had an ongoing duty to the New York Class to refrain from unfair and deceptive practices under GBL § 349 in the course of their business. Specifically, Defendant owed Plaintiff and Class Members a duty to disclose all material facts concerning the Defect because Defendant possessed exclusive knowledge, intentionally concealed such knowledge from Plaintiff

and the New York Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

127.    Defendant's violations present a continuing risk to the New York Class and the general public.

128.    Defendant's actions complained of herein affect the public interest.

129.    As a result of Defendant's statutory violations, Plaintiff and Class Members sustained injuries and are entitled to relief under the Act.

130.    Defendant engaged in fraudulent and deceptive conduct. As described above, Defendant's conduct defrauded Plaintiff and Class members by intentionally leading them to believe, through omissions, suppressions, and concealments of material fact, that the AirPods Max possessed important characteristics that they in fact do not possess—namely that they are premium quality, high performance wireless headphones will not repeatedly become wet with condensation, which will ultimately damage or degrade the headphones, after minimal use and/or as the result of normal and intended ordinary use—and inducing their purchases.

131.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to pay $549 to purchase Defendant's AirPods Max. Whether high-end, premium-priced, luxury headphones are able to be used for more than one or two hours of continuous use without having condensation gather and ultimately degrade the promised superior audio quality, connectivity, and battery life is material to purchasers of premium wireless headphones priced hundreds of dollars more than comparable competitors' headphones. Had Plaintiff and Class Members known about the defective nature of the AirPods Max, they would not have purchased them.

132.    Defendant failed to disclose and/or intentionally suppressed and concealed material facts about the performance and quality of the AirPods Max. As alleged herein, Defendant knew about the defective nature of the AirPods Max and was aware of numerous consumer complaints, but never disclosed the Defect to Plaintiff and Class members.

133.    Because the Defect in the AirPods Max is latent and unobservable until it arises, Plaintiff and Class members had no reasonable means of knowing that Defendant's representations concerning the AirPods Max were incomplete, false, or misleading, or that it had failed to disclose that the AirPods Max are defective. Plaintiff and Class members did not and reasonably could not have discovered Defendant's deceit before they purchased their AirPods Max.

134.    Defendant had a duty to disclose the Defect because the Defect is material and Defendant possessed exclusive knowledge of it. Defendant acquired its knowledge of the Defect from numerous consumer complaints and warranty claims, and Defendant's non-public internal data, analyses, and communications, among other sources.

135.    Defendant also had a duty to disclose the Defect because Defendant made partial representations regarding the purported high quality of the AirPods Max, yet failed to disclose facts that would have materially qualified these partial representations. Defendant made these partial and misleading representations through marketing materials, advertising, product brochures, and labeling, statements made through its agents and on its website, and in other sources that Plaintiff and Class members encountered before purchasing their AirPods Max. In light of Defendant's voluntarily providing such partial information to Plaintiff and Class members, Defendant had a duty to disclose the entire truth about the AirPods Max and, in particular, its defective nature and the Defect specifically.

136.    Before and immediately after purchase, Plaintiff relied on Defendant's reputation – along with Defendant's failure to disclose the faulty and defective nature of the AirPods Max on websites and in product manuals and brochures that accompanied the AirPods Max.

137.    These informational sources that Plaintiff saw or heard, including statements on websites, product manuals, brochures, or promotional materials, did not disclose the Defect or that the AirPods Max are defective.

138.    Defendant concealed the Defect to sell more AirPods Max at higher prices, to protect its brand, and to avoid the costs of honoring warranty claims and making effective repairs, replacements, and refunds for its customers.

139.    Defendant continued to conceal the defective nature of the AirPods Max even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

140.    Had Defendant disclosed its knowledge of the Defect before Plaintiff and Class members purchased their AirPods Max, they would have seen such disclosures and been aware of them. Defendant's omissions were material to Plaintiff and Class members, as they would not have purchased the AirPods Max had they known it contained the Defect and would not have paid $549 for the product.

141.    At the time that Defendant misled Plaintiff and Class Members, failing to disclose and concealing these material facts, and at the time that Plaintiff and Class members purchased the AirPods Max, Plaintiff and the Class were unaware of the Defect.

142.    Plaintiff and Class members did in fact rely upon Defendant's advertising scheme, materials, and website touting the AirPods Max and lacking any disclosure regarding the defective nature of the AirPods Max and such reliance was reasonable.

143.    As a direct and proximate cause of Defendant's deceptive and fraudulent conduct, Plaintiff and Class members sustained damages.

144.    Defendant's fraudulent conduct in suppressing and concealing material facts was malicious, oppressive, deliberate, and intended to defraud Plaintiff and Class members and enrich Defendant, and in reckless disregard of Plaintiff's and Class members' rights, interests, and well-being. Plaintiff and Class members seek an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined at trial.

**COUNT VI**
**Violation Of New York General Business Law § 350**
**N.Y. Gen. Bus. Law § 350**
**(On behalf of Plaintiff and the Class)**

145.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

146.    This claim is brought on behalf of Plaintiff individually and on behalf of the Class against Defendant.

147.    Defendant engages in the "conduct of business, trade, or commerce" under GBL § 350.

148.    False advertising under GBL § 350-a includes "advertising, including labeling, of a commodity … if such advertising fails to reveal facts material in light of … representations [made] with respect to the commodity. …"

149.    Defendant caused to be made or disseminated through New York – via documents provided with purchase, advertising, marketing, and other publications – statements that were untrue or misleading to Plaintiff and Class Members.

150.    Defendant made numerous material misrepresentations or omissions of fact with intent to mislead and deceive the Class Members concerning the AirPods Max, particularly with

regard to the Defect. Specifically, Defendant intentionally concealed and suppressed material facts concerning the quality of the AirPods Max in order to intentionally and grossly defraud and mislead Plaintiff and Class Members concerning the Defect.

151.    The misrepresentations and omissions set forth herein were material and likely to deceive a reasonable consumer.

152.    The Defect was undetectable to the ordinary consumer, until the Defect began to manifest in ways visible to Class Members.

153.    Defendant intentionally and knowingly misrepresented material facts regarding the AirPods Max with intent to mislead Plaintiff and Class Members.

154.    Defendant's false advertising was likely to and did, in fact, deceive reasonable consumers including Class Members about the true characteristics of the AirPods Max and the Defect.

155.    Defendant's violations of GBL § 350 present a continuing risk to Plaintiff, Class Members, and to the general public.

156.    Defendant's deceptive acts and practices affect the public interest.

157.    The AirPods Max did not perform as advertised and, thus, they are far less valuable than advertised.

158.    Class Members who purchased AirPods Max either would not have purchased those AirPods Max at all or else they would have paid less for the AirPods Max but for Defendant's false advertising in violation of GBL § 350.

159.    Plaintiff and Class Members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of Defendant's false advertising in violation of

GBL § 350, including but not limited to purchasing a diminished value or complete lost value for the AirPods Max purchased.

160.    Plaintiff and Class Members have suffered lost or diminished use, enjoyment, and utility of their AirPods Max along with suffering annoyance, aggravation, and inconvenience resulting from Defendant's violation of GBL § 350.

161.    Plaintiff and Class Members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, or (b) statutory damages. Because Defendant's conduct was committed willingly and knowingly, Plaintiff and Class Members are entitled to recover three times actual damages, up to $10,000.

162.    Plaintiff and Class Members also seek an order enjoining Defendant's false advertising and further seek attorney's fees and any other just and proper relief under GBL § 350.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiff, the Class and all Sub-Classes, and award the following relief:

A.  A declaration that Defendant is financially responsible for notifying all Class Members of the Defect;

B.  An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

C.  An order enjoining Defendant from further deceptive distribution and sales practices with respect to AirPods Max; compelling Defendant to issue a voluntary recall for the AirPods Max pursuant to 49 U.S.C. § 30118(a); compelling Defendant to repair and eliminate the Defect from every AirPods Max; enjoining Defendant from selling the

AirPods Max with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

D.  Damages and restitution in an amount to be proven at trial;

E.  A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the AirPods Max;

F.  Any and all remedies provided pursuant to implied warranty laws, common law fraud by concealment laws, and consumer protection statutes alleged herein;

G.  An award to Plaintiff and the Class and Sub-Classes of compensatory, exemplary, and statutory damages as applicable, including interest, in an amount to be proven at trial;

H.  A declaration that Defendant must disgorge, for the benefit of the Class and Sub-Classes, all or part of the ill-gotten profits it received from the sale of AirPods Max, and/or make full restitution to Plaintiff and Class Members;

I.  An award of attorneys' fees and costs, as allowed by law;

J.  An award of pre-judgment and post-judgment interest, as provided by law;

K.  Leave to amend the Complaint to conform to the evidence produced at trial; and

L.  Such other relief as may be appropriate under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of any and all issues in this action so triable.

Respectfully submitted,

Dated: April 23, 2025

/s/ Russell D. Paul
Russell D. Paul
Shanon J. Carson (*pro hac vice* forthcoming)
Amey J. Park (*pro hac vice* forthcoming)
**BERGER MONTAGUE PC**

1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:     (215) 875-3000
Fax:     (215) 875-4604
rpaul@bm.net
scarson@bm.net
apark@bm.net

***Attorneys for Plaintiff and the Proposed Classes***